Frost *against* Carter.

FROM the circumstances stated in this case, it appeared, that the defendant, on the 3d day of *January*, 1792, gave the plaintiff a promissory note for 9,299 dollars and 44 cts. payable in 90 days; that the plaintiff indorsed the note, and it went into circulation; that it was not paid when due; that the defendant was afterwards discharged under the insolvent act, and, at the time of the discharge, the note belonged to *Archibald Mercer;* that subsequent to the discharge, to wit, on the 1st *July*, 1794, the plaintiff paid 3,000 dollars, took up the note, and brought this suit to recover that money back from the defendant.

The question upon these facts, was, whether the debt, now claimed of the defendant, was a debt which the plaintiff could have asserted as his own, and have verified upon oath, as a specific and certain debt on the 2d day of *March*, 1793, when the defendant procured his discharge? In other words, was it a debt proveable against the estate of the insolvent?

*Per Curiam*, delivered by KENT, J. The act of insolvency, of the 21st *March*, 1788, in pursuance of which, the defendant obtained the discharge which he now sets up, in bar of the plaintiff's right of action, extends the discharge to such debts, and to such debts only, as are due at the time of the assignment of the insolvent's estate, and to debts contracted for before that time, though payable afterwards.— Those debts must be specific, and certain sums of money, to which the creditor can make oath, as be-

*Margin note:* If the indorsor of a note pay it after the discharge of the insolvent maker, under the insolvent law, the discharge is no bar to a subsequent recovery against the maker.

ing justly due, or to become due at some specified time. Unless the creditor, *at the time of the assignment*, be able to produce and verify such debt, in such manner, he would not be entitled to receive from the assignees, his dividend of the insolvent's effects, nor would he be barred from his future action against the insolvent.

Therefore, although the plaintiff in the present suit was, as I take for granted, on non-payment of the note by the defendant, duly fixed as indorsor, and although this was prior to the defendant's discharge, yet, until he had actually paid the holder of the note, and taken it up, he could not be said to have a certain and ascertained debt due to him from the defendant. His demand upon the defendant depended upon the defendant's final non-payment of the note, and his payment of it, for him. He stood, in respect to the defendant, in the relation of a *surety* only ; and what portion of the note, if any, short of the whole sum, the defendant himself might be able to pay to the holder, was a matter altogether uncertain. So that the plaintiff, until he paid the 3,000 dollars, and took up the note, had not any specific and certain debt due to him from the defendant, and as, therefore, this debt, which is now demanded, accrued subsequent to the defendant's discharge, and, in consequence of an actual payment by the plaintiff, the plaintiff was not entitled to claim his debt from the assignees of the defendant, and, consequently, the discharge of the defendant cannot be a bar to a recovery in the present suit.

This construction of the operation of our insolvent act, is the same with that of the *English* bankrupt law *in consimili casu.*

The stat. 4 and 5 Ann. c. 17, which was continued by the stat. of 5 G. II. c. 30, sec. 7, extends the discharge of the bankrupt to *all debts* by him *due or owing* at the time he became a bankrupt, and the stat. of 7 G. I. c. 31, extends it to debts contracted before the bankruptcy, though payable after. These statutes in this respect are to the same effect and almost precisely in the same words with our act of insolvency when it declares the force and extent of the insolvent's discharge.

By the *English* decisions upon those statutes, it has been frequently determined, and seems to be a rule permanently settled, that if the creditor, at the time of the bankruptcy, had not a certain debt due, to which he could attest by oath, and which he could bring in under the commission of bankruptcy, he is not barred by the bankrupt's discharge; and, in like manner, that a *surety*, although he be liable *before*, yet if he does not actually *pay* the debt till after the act of bankruptcy be committed, he then cannot prove it under the commission, and may resort to the bankrupt.

3 *Wils.* 14. 269. 276. 347. 530. 6 *Durnf.* 489. 1 *H.Black.* 640.

3 *Wils.* 347. *Cowp.* 526. *Durnf.* 599.

It has been objected, and with some plausibility, to this doctrine, that if a *debt* be due at the time of the assignment to any one who might have proved it, it must be done away by the discharge; for, that the insolvent is discharged from all his *then debts* to whomsoever they may belong, and that, if when discharged from the action of one creditor, he were to remain li-

R r

ALBANY.

* Cowp. 525.
† 1 H. Black.
640.

able at the suit of another for the same debt, it would be no discharge at all. These objections were rais- ed and overruled in the cases of *Taylor* v. *Mills and Magnall*,* and of *Brooks* v. *Rogers*.† The an- swer appears to me to be plain and sufficient, that where a plaintiff cannot prove a debt till he has actually paid the money, and the payment be of the proper debt of the insolvent, and after the assignment of his estate, the cause of action in such case arises *after* the insolvency, although upon a *pre-existing ground,* and as he cannot exhibit his debt to the assignees, be- cause there was no sum due, to which he could at- test when the assignment was made, it is highly, nay *indispensably* just, that he should resort to the insol- vent himself.

I am accordingly of opinion that judgment be ren- dered for the plaintiff.

Judgment for the plaintiff.